HARRINGTON, FOXX, DUBROW & CANTER, LLP
EDWARD W. LUKAS, JR. (CAL. BAR NUMBER 155214)
1055 W. Seventh Street, 29th Floor
Los Angeles, CA 90017
Telephone: (213) 489-3222 x227
elukas@hfdclaw.com

HONIGMAN MILLER SCHWARTZ AND COHN LLP
LEIGH C. TAGGART (*pro hac vice*)
BRIAN D. WASSOM (*pro hac vice*)
39400 Woodward Ave., Ste. 101
Bloomfield Hills, MI 48304-5151
Telephone:  (248) 566-8490

Attorneys for Plaintiff KRBL LIMITED

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| KRBL Limited,<br><br>                 Plaintiff,<br><br>v.<br><br>Overseas Food Distribution, LLC<br><br>                 Defendant. | Case No.<br><br>**VERIFIED COMPLAINT**[1] |

---

[1] The factual allegations of this pleading are verified in relevant part by the Declaration of Ms. Priyanka Mittal, filed contemporaneously herewith ("Mittal Dec").

1

Plaintiff KRBL Limited ("KRBL"), by its attorneys, brings its complaint against Defendant Overseas Food Distribution, LLC ("OFD") as follows:

## PARTIES

1.      Plaintiff KRBL is an Indian company with its principal place of business at 5190, Lahori Gate, Delhi 110006, India.

2.      Defendant OFD is a California corporation with its registered office at 6095 Malburg Way, Vernon, CA 90058.

## JURISDICTION AND VENUE

3.      The causes of action alleged herein arise under federal statutes regarding copyrights and trademarks, *i.e.*, 17 U.S.C. §§101 *et seq*. (the Copyright Act) and 15 U.S.C. §§1051 *et seq*. (the Lanham Act), so this Court has subject matter jurisdiction under 28 U.S.C. §§1331 and 1338.

4.      This Court has an independent basis for jurisdiction over all the claims herein in accordance with 28 U.S.C. §1332 because there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

5.      Personal jurisdiction and venue are proper in this Court pursuant to 28 U.S.C. §§1391 and 1400.

## BACKGROUND ALLEGATIONS
### KRBL is the World's Largest Basmati Rice Exporter

6.      KRBL Limited ("KRBL") was founded in 1889 by two enterprising brothers, Khushi Ram and Behari Lal. At the time of its establishment, KRBL (then

2

known as known as Khushi Ram Behari Lal) owned, among other things, cotton spinning mills and rice mills. In 1947, the company relocated its headquarters to Delhi. In the early 1970s, KRBL restructured its business to focus on rice. Mittal Dec. ¶4.

7.      KRBL started exporting basmati rice in 1978, and is a pioneer of packaged rice for the international community. KRBL has been awarded the prestigious Agricultural and Processed Foods Expert Authority ("AEPDA") trophy 14 times since the inception of the award. KRBL is now the world's largest branded basmati rice exporter, exporting rice to countries all over the world, including the United States. Mittal Dec. ¶5.

8.      KRBL has spent over three generations perfecting the basmati grain, and it has cultivated relationships with basmati rice farmers for generations. KRBL respects the farmers' awareness of traditional knowledge and skills, experience in modern-day crop management practices, commitment to excellence and access to top grade inputs in order to get a top-quality basmati rice harvest. Mittal Dec. ¶6.

**KRBL's India Gate Classic Is the
World's Highest Quality Basmati Rice**

9.      Basmati rice is aged and is known for its flavor and aroma while cooking. It is grown only once per year, in the Indo-Gangetic Plain beneath the Himalayan sub ranges. Like fine wine, basmati is aged for full-bodied flavor. India

Gate Classic is aged for a minimum of two years. The flavor and taste of India Gate Classic are also superior to that of its competitors because of the quality of the rice seed, the processes used to grow and mill the rice, and the selection during the specialized milling process of only the best long grain rice for use. Because of the care taken in the entire process, India Gate Classic has become the gold standard in the industry.  Mittal Dec. ¶7.

10.     KRBL has discerned a sense of nostalgia among many rice consumers, and especially among persons of Indian descent, for the traditional knowledge of rice production and traditional aroma and flavor of high-quality basmati rice. India Gate Classic is particularly popular among the Indian diaspora in countries around the world, including in the United States, for its longstanding quality. Mittal Dec. ¶8.

**India Gate Classic Is a Popular,**
**Well-Known Brand in the United States**

11.     KRBL has continuously sold India Gate Classic in the United States since approximately August 2005. Mittal Dec. ¶9.

12.     Sales of India Gate Classic in the United States have increased approximately threefold, if not more, between 2005 and 2015. It is distributed in stores across the United States, including in this judicial district, as well as through online retailers such as Amazon and Walmart. Mittal Dec. ¶9.

**KRBL's India Gate Classic Packaging is Well-Known,**

**Copyrighted, and a Distinctive Trade Dress**

13.    The design KRBL uses on its India Gate Classic packaging in the United States (the "India Gate Classic Packaging") was designed to evoke the sense of nostalgia among many rice consumers, especially among persons of Indian descent, for the traditional knowledge of rice production. Mittal Dec. ¶10.

14.    By virtue of its widespread and continuous use of the India Gate Classic Packaging in United States commerce since 2005, KRBL also owns common law trade dress rights in the India Gate Classic Packaging under various laws, including the Lanham Act and the statutory and common law of Michigan and California, among other jurisdictions.

15.    Specifically, KRBL's trade dress consists of its copyrighted packaging, which is distinctive and non-functional, featuring:

(a) the colors brownish maroon, and various shades of cream, beige and brown;

(b) a brownish maroon border with decorative gold designs;

(c) an antique ink drawing in sepia tones depicting an Indian architectural landmark, the dominant element of which is an archway;

(d) the "India Gate" brand name displayed in brown and white is superimposed over the upper middle portion of the image;

20963773.2

(e) the words "BASMATI RICE CLASSIC" in white lettering with brown outline for each letter;

(f) a color photograph of a plate of rice superimposed over the bottom right-hand corner of the picture of the architectural landmark;

(g) a prominent circular design featuring the colors green and red and descriptive information about the product (*e.g.*, "Exotic Aroma", "Extra Long Grain") along with a drawing of a steaming rice grain; and

(h) the back of the packaging featuring distinctive and original open- and closed-pan cooking instructions and graphics (together, (a)-(h) are called the "Trade Dress").

16.     In addition to owning similar copyright and trademark registrations and applications in nearly 50 countries, KRBL owns U.S. Copyright Registration No. VA0001690464, titled "India Gate Basmati Rice Classic," for the following depiction of the India Gate Classic Packaging (*see* Mittal Dec. Ex. ¶10):



17.     Also, the phrase INDIA GATE BASMATI RICE CLASSIC and the often-used shorthand INDIA GATE CLASSIC (together, the "CLASSIC Mark") have become KRBL's valuable common law trademarks across the United States in connection with the sale of rice.[2] Mittal Dec. ¶13.

18.     KRBL has built significant goodwill and secondary meaning in its CLASSIC Mark and Trade Dress in the United States. KRBL has undertaken significant promotional efforts in the United States, as well as around the world, to establish the CLASSIC Mark and Trade Dress as indicators of source for its flagship basmati rice brand. Mittal Dec. ¶15.

19.     India Gate Classic is known as "the top-tier, highest quality brand in the India Gate line and, indeed, throughout the entire world. If a customer wants the best basmati rice, they will ask for 'India Gate Classic,' or simply 'Classic.'" Declaration of Ali Mehdi (filed contemporaneously herewith) at ¶3 ("Mehdi Declaration")

---

[2] Separately, KRBL owns U.S. Trademark Registration No. 3,168,607 for the following composite mark that appears on all INDIA GATE-branded rice products:



20.     KRBL extensively advertises India Gate Classic rice on Indian television channels, including Udaya TV, Sun TV, Zee Cinema, IBN-7, NDTV Imagine, Star Plus, Zee TV, and other channels. These advertisements reach audiences in the United States through the internet.  These ads are also available through cable TV packages that include these Indian television networks, on YouTube, and through display in Indian grocery stores. All of these advertisements prominently display the CLASSIC Mark and Trade Dress. Mittal Dec. ¶16.

21.     KRBL also advertises through United States-based television channels, and it distributes posters and print advertisements that prominently display the CLASSIC Mark and Trade Dress. Mittal Dec. ¶17. Some examples include:



20963773.2



22.     KRBL also reaches customers in the United States and internationally through its social media channels, including the India Gate Rice Facebook page, which currently has over 78,000 likes. Mittal Dec. ¶17.

23.     KRBL also uses poster and print advertising that prominently features the India Gate Classic Packaging and the CLASSIC Mark. Mittal Dec. ¶17.

24.     KRBL regularly sends representatives to many of the largest regional food conventions to promote India Gate Classic, including the National Products Expo West in California, the Fancy Food Expo in New York, and the Mexican Exhibition. Mittal Dec. ¶18.

**The Infringing Mark and Infringing Packaging
Are Deceptively and Substantially Similar to
<u>KRBL's Copyright, CLASSIC Mark, and Trade Dress</u>**

25.     One of the brands of basmati rice that competes with India Gate Classic is sold under the brand name "India Salaam Classic" (the "Infringing Mark").[3] This brand of rice is manufactured by the Indian company PK Overseas Ltd., and is distributed in California and in an unknown number of surrounding areas by Defendant OFD. Mittal Dec. ¶19.

26.     KRBL's competitors have not been able to match the distinctive quality of India Gate Classic and the confidential processes KRBL uses to produce that rice. Perhaps for this reason, the packaging of India Salaam Classic has been intentionally designed to mimic KRBL's CLASSIC Mark and Trade Dress. Mittal Dec. ¶19.

27.     In late 2015, KRBL discovered that OFD was distributing India Salaam Classic-branded rice in the following packaging (the "Infringing Packaging") in California and surrounding states:

---

[3] This brand sometimes also spells the word "Salaam" as "Salam." Moreover, like the India Gate Classic Packaging, India Salaam's packaging uses the word "Pure Basmati Rice" between the words "India Salaam" and "Classic." For simplicity, KRBL will refer herein to these variations collectively as the "Infringing Mark."



Mittal Dec. ¶19.

       28.     A side-by-side comparison of the India Gate Classic Packaging and the Infringing Packaging makes obvious that the Infringing Packaging was designed to mimic, and thus to benefit from the goodwill inherent in, KRBL's Classic Mark and Trade Dress:



Mittal Dec. ¶20.

20963773.2

29.     This is not the only example of the Infringing Mark and Infringing Packaging causing confusion with India Gate Classic. India Gate Classic is sold all over the world, and India Salaam Classic, packaged in the Infringing Packaging at issue here, has followed into many of those markets. KRBL has already been successful in having the Infringing Packaging removed from some of those markets. Mittal Dec. ¶21.

30.     For example, KRBL has filed a lawsuit that is currently pending in Canada in order to stop the distribution and sale of India Salaam Classic rice using the Infringing Packaging. Although that litigation and related negotiations are still ongoing, the Canadian defendants have indicated a willingness to redesign the Infringing Packaging. Mittal Dec. ¶22 & Exhibit F.

31.     The Infringing Packaging was also recently removed from the Singaporean market by Mohamed Mustafa & Samsuddin Co PTE Ltd., a distributor that had been distributing both brands in Singapore. In a signed and sealed undertaking dated January 22, 2016, the company wrote:

> That upon comparison of the [sic] both the packing's i.e. 'India Gate Basmati Rice Classic' and 'India Salaam Basmati Rice,' we found that the packing, Trade dress, design, color scheme, color combination of 'India Salaam Basmati rice' is deceptively and confusingly similar to the KRBL's well known products 'India Gate Basmati Rice Classic' and its Trade dress, design, color scheme, color combination. The Packaging of India Salam/Salaam appears to be a deliberate attempt to imitate the

overall appearance of KRBL's India Gate Basmati Rice classic packaging. . . . That Packaging of India Salam/Salaam leading the confusion in the mind of consumers and is likely to mislead the public to believe that the India Salaam Basmati rice originate with or are otherwise licensed by KRBL Limited, which is not the case.

We are withdrawing 'India Salaam Basmati Rice' from our shelves and stores with immediate effects and in future we shall not import India Salaam Basmati. We are destroying all materials including stationary, packing material, badges, cloth printed labels, books, publications, articles, advertisements or any other incrementing materials bearing the package of India Salaam Basmati Rice.

Mittal Dec. ¶22 & Ex. G.

**KRBL Is Being Harmed by OFD's**
**Infringing Mark and Infringing Packaging**

32.     Distributors of India Salaam Classic have misled their customers into believing that India Salaam Classic is an offshoot or sister brand to India Gate Classic. After seeing the Infringing Packaging, people have believed this and bought India Salaam Classic, only to be disappointed by the lesser quality that they then incorrectly attribute to India Gate Classic. Mittal Dec. ¶23.

33.     KRBL has received complaints from distributors and consumers all over the world about the quality of India Salaam Classic that it does not make, which is powerful evidence of actual confusion. Mittal Dec. ¶24; Mehdi Dec. ¶¶14, 21 & Ex. A.

14

34.     For example, Canadian customer "Vinita" complained that "I have been a devoted customer of yours for years, but I was greatly upset with the last India Salam Basmati Rice that I purchased …. [I]t hasn't the same quality [as] India gate, it has damaged rice. … Please clean up your act soon or I will be forced to move on.") Customer Baldish Bahra complained he "will not stand for spending my hard-earned money on an item, only to have it not only be bad quality, but not even be the same item that I thought I was purchasing"). Mehdi Dec. Ex. A.

35.     KRBL's Midwest dealer has reported that several of his customers have become confused between India Gate Classic and India Salaam Classic, and that this is hurting his sales. Contemporaneously with this lawsuit, KRBL has taken action against identical infringement in the Eastern District of Michigan. Mittal Dec. ¶21; Mehdi Dec. ¶12.

36.     KRBL has recently received multiple complaints from its California-based distributor about the confusion being caused by OFD's introduction of India Salaam Classic into the West Coast market, and the impact that confusion is having on his ability to sell India Gate Classic. Mittal Dec. ¶28.

37.     These examples are persuasive evidence that the Infringing Packaging is causing customer confusion amongst KRBL's customers in jurisdictions around the world, including in the United States and in this judicial district.

20963773.2

38.    KRBL reasonably fears that this impression will quickly destroy India Gate Classic's reputation for quality and deplete the goodwill that KRBL has cultivated over the past decade. Mittal Dec. ¶26.

39.    As a result of OFD's distribution of the Infringing Packaging, KRBL has and continues to suffer serious economic injury. Mittal Dec. ¶26.

40.    KRBL is informed that OFD has intentionally contributed to the confusion between the two brands by intentionally misleading customers into believing that India Salaam Classic and India Gate Classic are the same product. Mittal Dec. ¶23.

41.    KRBL has been, and is being, damaged by OFD's infringement as alleged herein, at least in part in ways that cannot be adequately measured or fully remedied by monetary damages.

**OFD Has Refused To Cease its Infringement**

42.    OFD used to import and distribute KRBL's India Gate Classic rice. After the OFD failed to make payments, KRBL terminated OFD's distributorship, and filed a collection action against OFD. OFD is very well aware of the goodwill and market value of India Gate Classic, and it decided to distribute the deceptively similar India Salaam rice to improperly capitalize upon that goodwill. OFD knows

16

exactly which customers to target to cause the maximum amount of disruption to KRBL's business. Mittal Dec. ¶27.

43.     On December 3, 2015, KRBL sent a cease and desist letter to OFD explaining that the Infringing Packaging is "confusing similar, and in many ways nearly identical" to KRBL's India Gate Classic Packaging. KRBL never received a response to that letter. Mittal Dec. ¶29.

44.     Therefore, KRBL is constrained to resort to this legal action in order to protect its valuable rights in the CLASSIC Mark and Trade Dress.

## COUNT I – COPYRIGHT INFRINGEMENT

45.     KRBL repeats and re-alleges herein each of the foregoing paragraphs.

46.     Under the Copyright Act, as the copyright owner, KRBL has the exclusive rights to reproduce its copyrighted India Gate Classic Packaging, to prepare derivative works based upon the India Gate Design, to display the India Gate Classic Packaging, to distribute copies of the India Gate Classic Packaging to the public, and to import copies of same, for the duration of the copyright.

47.     OFD's actions as described herein constitute reproduction, distribution, display, importation, and/or performance of the India Gate Classic Packaging without license or authorization, and therefore constitutes copyright infringement in violation of 17 U.S.C. §101 *et seq*.

48.     OFD is also liable under a theory of contributory, vicarious, and/or induced infringement for all infringements of the India Gate Classic Packaging by third parties who obtained the image from OFD.

49.     OFD's actions as alleged herein have been intentional and willful.

50.     KRBL has been, and is being, damaged by this infringement.

## COUNT II – TRADE DRESS INFRINGEMENT, TRADEMARK INFRINGEMENT, AND UNFAIR COMPETITION

51.     KRBL repeats and re-alleges herein each of the foregoing paragraphs.

52.     By virtue of long and continuous use of the Trade Dress and CLASSIC Mark in commerce in the United States, KRBL has gained trade dress rights in the Trade Dress and trademark rights in the CLASSIC Mark under Section 43(a) of the Lanham Act (15 U.S.C. §1125(a)) and the laws of various jurisdictions, including California.

53.     The Trade Dress and CLASSIC Mark are inherently distinctive, and/or have gained secondary meaning among retailers and purchasers of rice in the United States, such that the Trade Dress and CLASSIC Mark have become strong marks and indicators of source.

54.     The Trade Dress is not functional, but is purely ornamental.

55.     OFD distributes India Salaam Classic in the Infringing Packaging to substantially the same target market to which KRBL sells India Gate Classic.

56.     OFD advertises India Salaam Classic basmati rice bearing the Infringing Packaging through substantially identical marketing channels as KRBL uses to advertise India Gate Classic rice.

57.     The Infringing Packaging is highly and confusingly similar in appearance to the Trade Dress, and its distribution has already led to actual confusion.

58.     The Infringing Mark is also confusingly similar to the CLASSIC Mark.

59.     The similarities between the Infringing Mark and Infringing Packaging and the India Gate Classic Mark and Trade Dress are intentional.

60.     OFD's actions as described herein were done willfully and in bad faith.

61.     By importing, selling, and marketing the Infringing Packaging and the Infringing Mark, OFD has caused a likelihood of confusion in the marketplace between the Infringing Mark and Infringing Packaging, and between the Infringing Packaging and the Trade Dress.

62.     KRBL has been damaged and subject to irreparable harm because of OFD's actions.

## COUNT III – TORTIOUS INTERFERENCE WITH CONTRACT

63.     KRBL repeats and re-alleges herein each of the foregoing paragraphs.

64.     KRBL had a contract with one or more retail businesses that carried India Gate Classic at the time of the interference alleged herein.

65.     KRBL had a contract with Aramco Imports Inc. ("Aramco") to sell and distribute India Gate Classic at the time of the interference alleged herein.

66.     OFD had knowledge of the existence of these contracts between KRBL and retailers carrying India Gate Classic, and between KRBL and Aramco.

67.     OFD intentionally interfered with one or more of these contracts by, among other things, passing off India Salaam Classic as being the same as, or a related brand of, India Gate Classic, and by selling these retailers packages of India Salaam Classic designed in a manner that caused foreseeable customer confusion between the two different brands.

68.     OFD's actions described herein were wrongful *per se*, as there is no justification under law or ethics for intentionally misleading customers concerning the source, nature, or origin of a product.

69.     OFD's actions described herein were done willfully and in bad faith.

70.     OFD's actions described herein were intended to, and actually did, cause interference in one or more of KRBL's existing contracts, such that KRBL's sales of India Gate Classic were diminished, its relationships with one or more

20

customers were lost, and Aramco was induced to breach its contractual obligations to KRBL.

71.     KRBL has been damaged as a result of OFD's actions as described herein.

### COUNT IV – TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY

72.     KRBL repeats and re-alleges herein each of the foregoing paragraphs.

73.     KRBL had a business relationship or expectancy with one or more retail businesses that carried India Gate Classic at the time of the interference alleged herein.

74.     These business relationships had a reasonable likelihood of future economic benefit for KRBL.

75.     OFD knew of these business relationships or expectancies at the time of its interference.

76.     OFD intentionally interfered with one or more of these relationships or expectancies by, among other things, passing off India Salaam Classic as being the same as, or a related brand of, India Gate Classic, and by selling these retailers packages of India Salaam Classic designed in a manner that caused foreseeable customer confusion between the two different brands.

20963773.2

77.     OFD's actions described herein were wrongful *per se*, as there is no justification under law or ethics for intentionally misleading customers concerning the source, nature, or origin of a product.

78.     OFD's wrongful intent is further corroborated by its acts of misleading customers concerning the source, nature, or origin of India Salaam Classic.

79.     OFD's actions described herein were done willfully and in bad faith.

80.     OFD's actions described herein were intended to, and actually did, cause interference in one or more of KRBL's existing relationships or expectancies, such that KRBL's sales of India Gate Classic were diminished, and its relationships with one or more customers were lost, and the amount of India Gate Classic rice it was able to sell to and/or through Vic Soulahian was reduced..

81.     KRBL has been damaged as a result of OFD's actions as described herein.

## RELIEF REQUESTED

Accordingly, KRBL prays that this Court enter a judgment in its favor and against OFD as follows:

1)     temporary and permanent injunctions to prevent or restrain further importation, sale, or distribution of the Infringing Packaging and the Infringing Mark under 15 U.S.C. §1116, 17 U.S.C. §502 and other applicable laws;

20963773.2

2)      court orders impounding (a) all tangible examples of the Infringing Packaging and the Infringing Mark and (b) all plates, molds, matrices, masters, tapes, film negatives, or other articles by means of which such Infringing Packaging or the Infringing Mark may be reproduced under 15 U.S.C. §1116, 17 U.S.C. §503 and other applicable laws;

3)      as part of any final judgment or decree, a court order mandating destruction of the Infringing Packaging and the Infringing Mark under 15 U.S.C. §1118, 17 U.S.C. §503 and other applicable laws;

4)      disgorgement of Defendant's profits received in connection with the importation, distribution, and sale of products bearing the Infringing Packaging or the Infringing Mark including enhanced damages, all as provided under 15 U.S.C. §1117, 17 U.S.C. §504 and other applicable laws, or statutory damages of $150,000 per infringement under 17 U.S.C. §505;

5)      KRBL's full costs in any enforcement action, as well as attorney's fees under 15 U.S.C. §1117, 17 U.S.C. §505 and other applicable laws;

6)      an award of damages according to the proofs for any amount not fully compensated by the items of relief requested above; and

7)      all other relief that the Court may deem just and warranted.

20963773.2

Respectfully submitted,

/S/_____

HARRINGTON, FOXX, DUBROW & CANTER, LLP
EDWARD W. LUKAS, JR. (CAL. BAR NUMBER 155214)
1055 W. Seventh Street, 29th Floor
Los Angeles, CA 90017
Telephone: (213) 489-3222 x227
elukas@hfdclaw.com

HONIGMAN MILLER SCHWARTZ AND COHN LLP
LEIGH C. TAGGART (*pro hac vice*)
BRIAN D. WASSOM (*pro hac vice*)
39400 Woodward Ave., Ste. 101
Bloomfield Hills, MI 48304-5151
Telephone:     (248) 566-8490

Attorneys for Plaintiff KRBL LIMITED

20963773.2